STATE OF NEBRASKA ON BEHALF OF L.L.B., A MINOR CHILD, APPELLANT, V. MARQUISE S. HILL, APPELLEE.

682 N.W.2d 709

Filed July 16, 2004. No. S-03-225.

Anthony R. Medina for appellant.

Thomas C. Riley, Douglas County Public Defender, and Robert M. Williams for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

In 1996, the district court entered a default decree determining that Marquise S. Hill was the father of L.L.B. and ordering him to pay child support. Although Hill moved to set aside the decree within the same court term, the motion was dismissed for lack of prosecution. In 2002, DNA tests showed that Hill was not L.L.B.'s father, and Hill moved to vacate the paternity decree. The court granted the motion and vacated the decree, as well as child support arrearages.

The State on behalf of L.L.B. does not contest the vacation of the paternity determination and concedes that Hill should not be liable for future child support. But it argues that the court erred in vacating the arrearages. Because of Hill's inexcusable delay in invoking the district court's equity powers, we reverse.

## BACKGROUND

In May 1996, the State on behalf of L.L.B. filed a petition for establishment of paternity and support. At the same time, the State moved for genetic testing. The transcript shows that a civil process server personally served Hill at Idelman Telemarketing with the petition, a notice of right to counsel, a notice of hearing, and a motion for genetic testing. Hill does not deny that he received these materials, but claims that he was in prison at the time. Hill failed to appear for the scheduled hearing. On July 18, 1996, the court entered a decree determining that Hill was L.L.B.'s father and ordering him to pay child support.

An attorney subsequently entered an appearance for Hill, and on August 15, 1996, Hill moved to set aside the decree and to file an answer out of time. Hill made the motion during the same term that the court had entered the paternity decree.

On May 23, 1997, the court administrator sent a letter to "Marquise S. Hill (C/O Idelman Telemarketing, 7415 Dodge

Street, Omaha, Nebraska 68114)." The letter warned Hill that his motion to set aside the default decree would be dismissed within 30 days unless further action was taken. Hill appears to have been in prison at the time, and it is unclear whether he received the notice.

The motion to set aside the default decree was dismissed on June 26, 1997, for failure to prosecute. Notice was sent to a residential address in Omaha. But it appears Hill was still in prison at the time, and it is unclear whether he received notice of the dismissal.

Hill was released from prison in 1998. In December 2001, Hill's driver's license was suspended for delinquent child support payments. On January 28, 2002, the State filed an application for a show cause order. The court granted the application and ordered Hill to show cause why he should not be held in contempt for failure to pay child support. In response to the show cause order, Hill filed a motion for genetic testing and child support suspension. The court granted the motion, and the testing showed that Hill was not L.L.B.'s father. Hill then filed a motion to terminate.

At a hearing before a referee, Hill testified that when he first received the petition for establishment of paternity, he spoke with the counselor at his housing unit at the penitentiary. He also claimed that he and members of his family had spoken with the "child support department" and told them that he was not L.L.B.'s father. Concerning the attorney who had filed the motion to set aside the paternity decree, he testified, "I tried to hire her to represent me on this and her lawyer abilities just wasn't [sic] up to par. She accepted my money and never called me back. She never said anything, ever." Hill also testified that both while he was in prison and after he was released, the State garnished his wages.

The referee recommended that the court enter an order vacating the paternity determination and terminating Hill's future child support obligations. However, the referee also recommended that the court not vacate the arrearages, reasoning:

> [Hill] does not dispute valid service of process, including the notification of his right to counsel. Instead, he did not legally defend the suit and judgment was entered in default. To now vacate that valid decree would be inequitable to the child. For the last six years, [the child and the State]

reasonably relied upon the valid judgment thereby precluding pursuit of another. [Hill], not the child, should bear the burden of the failure to defend the case from the outset.

Hill filed an objection to the referee's recommendation. The court disagreed with the referee's recommendation and vacated the arrearages.

## ASSIGNMENTS OF ERROR

The State on behalf of L.L.B. assigns that the district court erred in (1) finding that Hill was not liable for any child support arrearages that had accrued from the time that the decree was entered to the time when it was established that he was not the father, (2) using its equitable powers to sustain Hill's motion to terminate, and (3) failing to apply the doctrine of laches to the motion to terminate.

## STANDARD OF REVIEW

It would unduly lengthen the opinion to set out the details of this confusing procedural history. However, on appeal, the parties proceed as though Hill had petitioned the district court to use its independent equity power to set aside the paternity decree and to vacate the child support arrearages. We agree that this is the best characterization of the proceedings. On appeal from an equity action, the appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent from the conclusion reached by the trial court. *Hornig v. Martel Lift Systems*, 258 Neb. 764, 606 N.W.2d 764 (2000).

## ANALYSIS

Here, the substantive issue is narrow. The State did not oppose Hill's request to vacate the paternity decree or his request to terminate his future child support payments. The sole issue is whether the court erred in vacating the child support arrearages.

■ A litigant seeking the vacation or modification of a prior judgment after term may take one of two routes. The litigant may proceed either under Neb. Rev. Stat. § 25-2001 (Cum. Supp. 2002) or under the district court's independent equity jurisdiction. *DeVaux v. DeVaux*, 245 Neb. 611, 514 N.W.2d 640 (1994). Hill has invoked the court's independent equity jurisdiction.

In *Gress v. Gress*, 257 Neb. 112, 117, 596 N.W.2d 8, 13 (1999), we said:

> Child support payments become a vested right of the payee in a dissolution action as they accrue. . . . While a past-due child support arrearage is already accrued and vested, a future payment is not. . . . A court may, therefore, modify the amount of child support due in the future but may not forgive or modify past-due child support.

(Citations omitted.) We have not addressed whether this rule precludes a court from using § 25-2001 or its independent equity power to vacate child support arrearages after the underlying paternity determination has been vacated. We need not decide that issue, however, because we conclude that Hill's lack of diligence precludes him from invoking equity.

■ To be entitled to equitable relief from a judgment, a party must show that the situation is not due to his or her "fault, neglect, or carelessness." 49 C.J.S. *Judgments* § 435 at 600 (1997). "[T]he party seeking relief in equity from a judgment at law must show clearly that the judgment complained of is . . . not of his own negligence." *Shufeldt v. Gandy*, 34 Neb. 32, 36, 51 N.W. 302, 303 (1892). See, also, *Koehler v. Reed*, 1 Neb. (Unoff.) 836, 96 N.W. 380 (1901) (tracing history of rule); Restatement (Second) of Judgments § 67 at 162 (1982) ("a judgment by default may be avoided if . . . (2) The applicant for relief acted with due diligence in ascertaining that the judgment had been rendered and with reasonable promptness in seeking relief").

Here, Hill does not deny that he received notice of the 1996 petition to establish paternity and the State's motion for DNA testing. Instead of having the testing done, he failed to appear, resulting in a default judgment. Within a month, Hill hired an attorney who filed a motion to vacate the decree and child support award. However, neither Hill nor his attorney prosecuted the motion, and it was dismissed. Hill complains that he should not be blamed for the dismissal because it was the result of his attorney's negligence. The soundness of this argument is questionable. See *Roemer v. Maly*, 248 Neb. 741, 746, 539 N.W.2d 40, 45 (1995) ("litigant has a duty to follow the progress of the case, rather than to merely assume that counsel is doing everything necessary and proper"). But even if we were to accept the argument,

the dismissal of his motion to vacate in term occurred almost 5 years before Hill invoked the court's equitable jurisdiction. Hill testified that during this period, the State was garnishing his wages. Thus, he must have known that the arrearages were accruing. Yet even though he firmly believed that he was not the child's father, he did nothing until the State commenced contempt proceedings in 2002, almost 5 years after the dismissal of his motion to vacate in term. It was Hill's inexcusable lack of diligence which led to the accumulation of the arrearages, and as a result, equity will not aid him in vacating those arrearages. See *CSEA v. Guthrie*, 84 Ohio St. 3d 437, 705 N.E.2d 318 (1999).

## CONCLUSION

The court erred in vacating the child support arrearages owed by Hill.

REVERSED.