IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE ON BEHALF OF CHRISTIANA W. V. TORIBIO G.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA ON BEHALF OF CHRISTIANA W., APPELLEE,

V.

TORIBIO G., APPELLANT, AND AMANDA W., APPELLEE.

Filed October 31, 2023.    No. A-22-815.

Appeal from the District Court for Hall County: ANDREW C. BUTLER, Judge. Affirmed.

Jamie L. Arango, of Arango Law, L.L.C., for appellant.

Benjamin W. Shanahan, Hall County Attorney's Office, for appellee State of Nebraska.

PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

In 1996, the district court for Hall County entered a default judgment determining that Toribio G. was the father of Christiana W. and ordering him to pay child support. In 1999, Toribio submitted to genetic testing, which revealed that he was not, in fact, Christiana's father. Twenty years later, in 2019, the parties entered into a stipulation that Toribio should be disestablished as Christiana's biological father. However, the parties also agreed that Toribio would still be responsible for his child support arrearages. In 2022, Toribio filed a motion to vacate the 1996 default judgment of paternity, arguing it was void. The district court denied this motion, and Toribio appeals. For the reasons set forth herein, we affirm the denial of Toribio's 2022 motion to vacate.

BACKGROUND

In June 1996, a default judgment was entered establishing Toribio as Christiana's father and ordering him to pay child support. A copy of this default judgment is not included in our record. However, pleadings filed by both the State and Toribio, which are included in our record, assert that a default paternity judgment was entered in June 1996. Additionally, the State's pleadings assert that the default judgment was entered because Toribio failed to file an answer to the State's petition to establish paternity and support and failed to attend the scheduled hearing on the petition, despite being served and receiving proper notice of the proceedings. Toribio does not explicitly acknowledge that he received proper notice of the paternity proceedings in 1996, but he also does not contest this fact. Other pleadings filed by Toribio appear to indicate that he was properly served and provided with notice of the proceedings. In a letter Toribio wrote to the prosecutor in 1999 he explained that he "ignored everything" about the paternity proceedings because he "strongly believed" he was not Christiana's father. Toribio also indicated in his 2022 motion to vacate that although he received documents regarding the paternity proceedings, the documents were in English, a language he does not speak or read.

The 1999 letter Toribio wrote to the prosecutor appears to be the first response of any kind Toribio provided in the paternity action. In this letter, Toribio indicated that, as a result of the paternity judgment and child support order, his wages were being garnished. He asserted that he is not the father of Christiana and that Christiana's mother "has made a fraudulent claim against [him] and is using the power of the state to steal from [him]." He asked the prosecutor to schedule genetic testing. Notably, there is nothing in our record to indicate that Toribio filed anything with the district court at this time regarding the June 1996 default judgment.

Genetic testing was completed in June 1999. Such testing indicated that Toribio was "excluded" as Christiana's father. Despite these results, Christiana's mother continued to assert that Toribio was Christiana's father. She questioned whether Toribio was actually the person who had submitted to the DNA test.

There is nothing in our record to indicate that, after receiving the results of the genetic testing in June 1999, Toribio filed anything with the district court requesting that the 1996 default judgment be vacated or modified, or requesting a new trial on the matter. Rather, in March 2000, the State filed an amended petition for declaratory judgment. Essentially, the State asked the district court to reaffirm the viability of the 1996 default paternity judgment and child support order.

A hearing was held on the State's amended petition for declaratory judgment in July 2000. Toribio did not appear at this hearing. In its order filed after the hearing, the court made an explicit finding that

> [A] copy of the original Petition for Declaratory Judgment was served on [Toribio] on February 18, 2000, and that a copy of the Amended Petition for Declaratory Judgment was served on [Toribio] in Iowa on March 22, 2000.
>
> The Court notes from the court file that no response has been filed to the Amended Petition for Declaratory Judgment by [Toribio]. Specifically, no answer or special appearance has been filed in this matter by [Toribio].

Because Toribio did not file a response to the amended petition and did not appear at the hearing, the State moved to dismiss without prejudice its amended petition for declaratory judgment. The court granted the motion to dismiss the amended petition without prejudice. The court then stated:

> The original order in this matter, which found [Toribio] to be the father of Christiana . . . dated June 24, 1996, which ordered him to pay $243 per month in child support beginning July 1, 1996, and which entered a judgment against [Toribio] for birth-related medical expenses in the amount of $1598.61, in favor of The Nebraska Department of Health and Human Services, payable at the rate of $20 per month starting July 1,1996, stands.

The county attorney filed proof that he had mailed Toribio a copy of the district court's order detailing the dismissal of the amended petition for declaratory judgment.

More than 16 years after entry of the July 2000 order, in November 2016, Toribio filed a "complaint for relief" in the district court. In the complaint, he asked the district court "to set aside and, order void abinitio [sic], the final legal determination of paternity, including any obligation to pay child support as stated in the 'Child Support Referree [sic] Report' signed on 24th day of June 1996 and any other order incorporating the same."

A subsequent journal entry entered by the district court in March 2019 appears to address Toribio's complaint. In the journal entry, the district court explains that genetic testing had revealed that Toribio was not Christiana's biological father. The court then stated that the parties had entered into a joint stipulation: "The parties stipulated on the record that they had reached an agreement that would allow Toribio . . . to be disestablished as the father of Christiana . . . , and that all child support arrears due and owing should remain in full force and effect." The record reflects that at the time of this stipulation, Toribio was represented by counsel. The district court entered an order reflecting the parties' stipulation.

In May 2022, Toribio filed a motion to vacate the 1996 default paternity judgment, arguing that such judgment was void ab initio, or in the alternative, arguing that the judgment should be vacated as of the date that the State knew or should have known that he was not, in fact, Christiana's biological father. Essentially, Toribio did not believe that he should have to pay any child support arrearages which were due and owing as a result of the 1996 default paternity judgment. The May 2022 motion to vacate is the operative pleading in this appeal.

The State filed a response and objection to Toribio's motion to vacate. In the response, the State argued that in 2018 Toribio entered into a stipulation which explicitly provided that, even though he was disestablished as Christiana's father, he was required to pay the accrued child support arrearages. The State asserted that nothing had changed since that stipulation which would negate Toribio's responsibility to pay the past due child support. The State also asserted that it would not be equitable or in the best interests of Christiana to vacate the 1996 default paternity judgment now because Toribio's delay in exercising his rights prevented the State from ever establishing paternity and support in another individual.

After a hearing, the district court entered a thorough, 15-page order detailing the procedural history of this case and, ultimately, denying Toribio's motion to vacate with prejudice. The court held that Toribio is "responsible for all child support arrearages owing up until the 2018 stipulation." In reaching its decision, the district court found, "the original 1996 Order is not void." The court also found that because Toribio failed to exercise due diligence in disestablishing his

paternity in a timely manner, that the court could not vacate his responsibility to pay the accrued child support arrearages. The court explained:

> [T]he record reflects that [Toribio] had many opportunities to appear at hearings and file answers to petitions. The record reflects that [Toribio] was personally served with notices of hearings and filings and took no action. [Toribio] has been given multiple opportunities to be heard, file answers, testify at trial, and present rebuttal evidence to challenge the finding of his paternity. The facts show that [Toribio] has demonstrated an extreme lack of due diligence and is responsible for the child support arrearages.

Toribio appeals from the district court's denial of his motion to vacate the 1996 default paternity judgment and support order.

## ASSIGNMENTS OF ERROR

On appeal, Toribio assigns, restated and consolidated, that the district court erred in denying his motion to vacate because the 1996 default judgment of paternity was void ab initio and erred in finding that he was still required to pay his child support arrearages.

## STANDARD OF REVIEW

A litigant seeking the vacation or modification of a prior judgment after term may take one of two routes. The litigant may proceed under Neb. Rev. Stat. § 25-2001 (Reissue 2016) or under the district court's independent equity jurisdiction. See e.g. *State on behalf of L.L.B. v. Hill*, 268 Neb. 355, 682 N.W.2d 709 (2004).

On appeal from an equity action, the appellate court tries factual questions de novo on the record, and, as to questions of both fact and law, is obligated to reach a conclusion independent from the conclusions reached by the trial court. *Id.*

## ANALYSIS

Section 25-2001(1) is not available to Toribio in these proceedings because his motion to vacate was filed well more than 6 months after the entry of the 1996 default judgment. Moreover, Toribio does not contend that § 25-2001(3) and (4) apply. We note that § 25-2001(2) provides that "[T]he power of a district court under its equity jurisdiction to set aside a judgment or an order as an equitable remedy is not limited by this section." As such, we proceed to analyze Toribio's claims pursuant to the district court's independent equity jurisdiction.

In his brief on appeal, as in the district court, Toribio contends that the 1996 default paternity judgment was void ab initio because the district court did not comply with the statutory requirements for determining paternity. In 1996, Neb. Rev. Stat. § 43-1412 (Reissue 1994) provided the statutory basis for determining paternity in the State of Nebraska. In 1996, that statute read as follows:

> (1) The method of trial shall be the same as that in other civil proceedings, except that the trial shall be by the court without a jury unless a jury is requested (a) by the alleged father, in a proceeding instituted by the mother or the guardian or next friend, or (b) by the mother, in a proceeding instituted by the alleged father. It being contrary to public policy that such proceedings should be open to the general public, no one but the parties, their

- 4 -

counsel, and others having a legitimate interest in the controversy shall be admitted to the courtroom during the trial of the case. The alleged father and the mother shall be competent to testify. The uncorroborated testimony (i) of the mother, in a proceeding instituted by the mother or the guardian or next friend, or (ii) of the alleged father, in a proceeding instituted by the alleged father, shall not alone be sufficient to support a verdict or finding that the alleged father is actually the father. Refusal by the alleged father to comply with an order of the court for genetic testing shall be deemed corroboration of the allegation of paternity. A signed and notarized acknowledgment of paternity or a certified copy or certified reproduction thereof shall be admissible in evidence in any proceeding to establish paternity without the need for foundation testimony or other proof of authenticity or accuracy. If it is determined in this proceeding that the alleged father is actually the father of the child, a judgment shall be entered declaring the alleged father to be the father of the child.

(2) A default judgment shall be entered upon a showing of service and failure of the defendant to answer or otherwise appear.

(3) If a judgment is entered under this section declaring the alleged father to be the father of the child, the court shall retain jurisdiction of the cause and enter such order of support, including the amount, if any, of any court costs and attorney's fees which the court in its discretion deems appropriate to be paid by the father, as may be proper under the procedure and in the manner specified in section 43-512.04. If it is not determined in the proceeding that the alleged father is actually the father of the child, the court shall, if it finds that the action was frivolous, award court costs and attorney's fees incurred by the alleged father, with such costs and fees to be paid by the plaintiff.

Toribio asserts that the district court did not have the requisite evidence required by § 43-1412(1) to establish his paternity and order child support. However, the district court clearly relied on § 43-1412(2), Toribio's failure to appear at or participate in the paternity proceedings, when entering the June 1996 default judgment. Notably, Toribio does not contest that he was properly served with the petition to establish paternity or that he was properly notified of the scheduled hearings in the matter. Rather, Toribio appears to concede that he was aware of the proceedings, but did not participate because he did not believe he had to if he was not Christiana's father. As such, even though we do not have a record of the initial paternity proceedings from 1996, we address Toribio's arguments regarding these proceedings as if he was properly served and notified.

In 1996, there was no fully litigated paternity proceedings because Toribio failed to appear and participate in the matter. Contrary to Toribio's arguments, pursuant to § 43-1412(2), the entry of the default paternity judgment was proper. The language of § 43-1412(2) does not indicate that any evidentiary hearing must be held in the putative father's absence in order to support entry of the default judgment. Moreover, Toribio has cited to no case law which would support such a theory. Section 43-1412(2) provides that a default judgment may be entered when the putative father has absented himself from the proceedings. Much like in other civil actions where default judgments can be entered in a defendant's absence, the plaintiff's allegations in the petition are considered uncontested. See e.g. *Turbines Ltd. v. Transupport, Inc.*, 285 Neb. 129, 137, 825

- 5 -

N.W.2d 767, 774 (2013) quoting *State of Florida v. Countrywide Truck Ins. Agency*, 258 Neb. 113, 602 N.W.2d 432 (1999) ("The general rule is that 'where a defendant is in default, the allegations of the [complaint] are to be taken as true against him, except allegations of value and amount of damage.' Thus, if the complaint states a cause of action, the plaintiff is entitled to judgment without further proof."). Here, the State alleged that Toribio was Christiana's father. Toribio failed to appear and contest this assertion. The default paternity judgment was proper.

Toribio asserts that even if the 1996 default judgment was properly entered, that he should not be responsible for the amount of arrearages which accrued after he submitted to the initial paternity test in 1999 because at that time, the State had knowledge that he was not, in fact, Christiana's father. In its order, the district court found that Toribio's claim failed because he failed to act with due diligence to protect his rights. We agree.

To be entitled to equitable relief from a judgment, a party must show that the situation is not due to his or her fault, neglect, or carelessness. See *State on behalf of L.L.B. v. Hill*, 268 Neb. 355, 682 N.W.2d 709 (2004). "[T]he party seeking relief in equity from a judgment at law must show clearly that the judgment complained of is . . . not of his own negligence." *Shufeldt v. Gandy*, 34 Neb. 32, 36, 51 N.W. 302, 303 (1892). Essentially, a default judgment may be rescinded where the applicant for relief acts with due diligence in ascertaining that the judgment had been rendered and seeking relief in a reasonably prompt manner.

Here, Toribio does not deny that he received notice of the 1996 petition to establish paternity. Instead of responding to the petition, however, he failed to appear, resulting in a default judgment. As early as 1999, Toribio was definitively aware of the entry of the default judgment because his wages were being garnished to pay his child support obligation and he wrote a letter to the county attorney denying his paternity of Christiana. However, at that time, Toribio did not file anything with the district court requesting that the 1996 default judgment be vacated or modified, or requesting a new trial on the matter. Toribio also did not file anything with the district court even after the genetic testing conducted in 1999 revealed that Toribio was not, in fact, Christiana's father. Contrary to Toribio's assertions, it was not the State's responsibility to seek to overturn the 1996 default paternity judgment. The responsibility belonged to Toribio. Despite this fact, the State did file a motion for a declaratory judgment with the district court after the 1999 genetic testing, asking the court to revisit the status of the paternity decree. The State did not concede that Toribio was not the father based at least in part on the mother's contentions that someone other than Toribio had appeared and undergone the paternity testing. Toribio, though given the opportunity to refute these claims, simply failed to participate in any manner in those proceedings. As a result, the State's motion was dismissed and the prior order was left in place.

Toribio did not file anything with the district court until 2016, 20 years after the default judgment was entered and 17 years after he wrote his letter to the county attorney. By this time, Christiana was no longer a minor. In 2016, Toribio filed a complaint requesting that the district court vacate the determination of paternity. However, prior to a final hearing on his complaint, he entered into a stipulation with the State and with Christiana's mother, which disestablished his paternity, but which also retained his responsibility to pay all accrued child support arrearages.

In May 2022, approximately 3 years after entering into this stipulation, Toribio has filed another motion to vacate the 1996 default paternity judgment. Stated simply, this motion is simply too little, too late, having been filed more than 25 years after the default paternity judgment. We

agree with the findings of the district court that Toribio "has demonstrated an extreme lack of due diligence" in seeking resolution of this matter.

Based upon Toribio's failure to take reasonable and necessary steps to timely request that the 1996 default paternity judgment be vacated, we must conclude that it was his extreme lack of diligence which led to the accumulation of child support arrearages. As such, equity will not aid him in vacating those arrearages at this time.

Moreover, given Toribio's decision to enter into the joint stipulation which disestablished his paternity, but which retained his child support obligation, we conclude that his current assertion that he should not have to pay child support is barred under the doctrine of judicial estoppel. The doctrine of judicial estoppel protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding. *Trausch v. Hagemeier*, 313 Neb. 538, 985 N.W.2d 402 (2023). Fundamentally, the intent behind the doctrine of judicial estoppel is to prevent parties from gaining an advantage by taking one position in a proceeding and then switching to a different position when convenient in a later proceeding. *Id*.

Our record demonstrates that in 2018 or 2019, Toribio entered into a stipulation with the State and with Christiana's mother regarding his paternity. This stipulation indicated that while Toribio was disestablished as Christiana's biological father, he still remained liable for the accrued child support arrearages up to the date of the stipulation. At the time of this stipulation, Toribio was represented by counsel. Based upon the stipulation, the district court entered an order on March 26, 2019, ordering that "all accrued child support arrears owed by Toribio . . . shall remain in full force and effect and be due to the Nebraska Child Support Payment Center." Three years later, in May 2022, Toribio filed the motion to vacate which is the subject of this appeal. Therein, Toribio argued that he should not be liable for the accrued child support arrearages. Given his prior stipulation that he was, in fact, liable for those arrearages, he is judicially estopped from changing his mind and now claiming otherwise. Toribio has not explained what circumstances have changed which would warrant the change in his position since entering into the stipulation. He also does not allege that at the time of the stipulation he was unaware of any relevant information. Because Toribio previously conceded that he was liable for the accrued child support arrearages, we find his current argument that he is not liable to be wholly without merit.

CONCLUSION

We affirm the decision of the district court to deny Toribio's motion to vacate the 1996 default paternity judgment. We also affirm the district court's decision that Toribio remains responsible for all child support arrearages due and owing up until the time he entered into the joint stipulation.

AFFIRMED.